## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | |
| **Plaintiff,** | **Civil Action No. 17-cv-4333** |
| **v.** | |
| **APPLE-METRO, INC. d/b/a APPLEBEE'S NEIGHBORHOOD GRILL & BAR,** | |
| **Defendant.** | **JURY TRIAL DEMANDED** |

## COMPLAINT

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of sex and to provide appropriate relief to an individual who was adversely affected by such practices ("Aggrieved Individual"). The U.S. Equal Employment Opportunity Commission (the "EEOC") alleges that Defendant Apple-Metro, Inc. ("Defendant" or "Apple-Metro") violated Title VII by subjecting the Aggrieved Individual to a hostile work environment because of sex—specifically, she was harassed because she is transgender—and by terminating her because of sex and/or in retaliation for complaints about that harassment.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991,

42 U.S.C. § 1981a.

2.      The unlawful acts alleged below were committed within the jurisdiction of the United States District Court for the Southern District of New York.

## PARTIES

3.      Plaintiff, the EEOC, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4.      Defendant Apple-Metro operates Applebee's Neighborhood Grill & Bar restaurants in the New York City metropolitan area, including a restaurant in Hawthorne, New York.

5.      At all relevant times, Defendant has been a corporation doing business in New York.

6.      At all relevant times, Defendant has had at least fifteen (15) employees.

7.      At all relevant times, Defendant has been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e-5(b), (g) and (h).

8.      During the year 2014 and continuing to the present, Defendant has continuously had more than 500 employees.

## ADMINISTRATIVE PREREQUISITES

9.      More than thirty (30) days prior to the institution of this lawsuit, the Aggrieved Individual filed a charge of discrimination (EEOC Charge No. 520-2016-01490C) with the EEOC, alleging violations of Title VII by Defendant.

10.     On August 2, 2016, the EEOC issued Defendant a Letter of Determination finding reasonable cause to believe that Defendant violated Title VII.

11.     The EEOC invited Defendant to join with the EEOC in informal methods of conciliation to endeavor to eliminate its unlawful practices and provide appropriate relief.

12.     The EEOC engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

13.     The EEOC was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

14.     On January 12, 2017, the EEOC issued to Defendant a Notice of Failure of Conciliation.

15.     All conditions precedent to the institution of this suit have been fulfilled.

## STATEMENT OF CLAIMS

16.     Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting the Aggrieved Individual to a hostile work environment because of sex:

   a)     Defendant employed the Aggrieved Individual as a hostess at its restaurant in Hawthorne, New York from on or about September 11, 2015, until September 25, 2015.

   b)     The Aggrieved Individual is transgender, which is to say that her gender identity (female) differs from the sex she was designated at birth (male).

   c)     Beginning on the Aggrieved Individual's first day of work and continuing every day that she worked for Defendant, employees at Defendant's Hawthorne restaurant repeatedly harassed the Aggrieved Individual about being transgender.

   d)     Employees repeatedly stood in groups gawking, laughing, and pointing at the Aggrieved Individual, and made crude and disparaging remarks about

her being transgender.

e)   Employees repeatedly referred to the Aggrieved Individual using derogatory language such as "chick with a dick" and "tranny," and made crude comments about her genitalia, including asking the Aggrieved Individual whether she "had a dick."

f)   Employees repeatedly made offensive statements about the Aggrieved Individual's gender—stating, for instance, "that's not a she, that's a *he*," and insisted on using male pronouns when referring to the Aggrieved Individual, instead of female pronouns, even though they knew that she objected to it.

g)   When employees approached the hostess stand where the Aggrieved Individual worked, they made demeaning comments like "Hey look, it's Caitlyn Jenner," a reference to a transgender celebrity.

h)   Employees refused to call the Aggrieved Individual by her actual (and legal) first name, Danielle, and repeatedly addressed her by an invented male name, "Daniel," even after she asked them to stop doing so.

i)   The Aggrieved Individual asked the employees to stop engaging in harassing behavior, but they persisted.

j)   The General Manager of Defendant's Hawthorne restaurant ("General Manager"), personally witnessed much of the harassment the Aggrieved Individual experienced, including employees calling the Aggrieved Individual a "tranny." The General Manager did nothing to intervene.

k)   The Aggrieved Individual also reported the harassment to the General

Manager on at least three different occasions, made it clear that the harassment was offensive, and asked the General Manager to do something to stop it.

l)   Specifically, on or about September 15, 2015, the Aggrieved Individual complained to the General Manager about the harassment.  The General Manager did not take corrective action, and the harassment against the Aggrieved Individual continued.

m)   Several days later, on or about September 18, 2015, the Aggrieved Individual told the General Manager that she was still being harassed and asked the manager to do something to address it.  The General Manager did not take corrective action and responded, in a hostile tone, "I don't know what you expect me to do, but if you think I am going to fire someone about this, I am not."

n)   On or about September 21, 2015, a concerned co-worker contacted Defendant's Area Director ("Area Director"), to report that the Aggrieved Individual was being harassed by employees at the Hawthorne restaurant.

o)   The Area Director was the supervisor of the General Manager and had responsibility for several of Defendant's restaurants, including the Hawthorne Restaurant.

p)   The Area Director did not take corrective action and the harassment of the Aggrieved Individual persisted.

q)   On or about September 22, 2015, the Aggrieved Individual told the General Manager that she was still being harassed and objected to the

5

General Manager's inaction regarding the harassment. The General

Manager simply smirked and walked away.

r)      The General Manager did not take corrective action and the harassment

of the Aggrieved Individual persisted.

s)      After management failed to take action to stop the harassment, the

Aggrieved Individual approached some of the employees who were

harassing her to ask them to stop.

t)      One of the employees responded by saying, "I don't know what the big

deal is because you're a tranny… you must be used to this by now."

Other employees responded by intensifying their harassment.

u)      Despite knowing of the harassment the Aggrieved Individual

experienced, Defendant failed to take corrective action to stop it.

v)      Because of the foregoing, the Aggrieved Individual experienced repeated

harassment in the workplace that was degrading, humiliating, and

unreasonably interfered with her work performance.

17.     On or about September 25, 2015, Defendant engaged in unlawful employment

practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)(1) by discharging

the Aggrieved Individual because of sex:

a)      On September 21, 2015, the Area Director learned that the Aggrieved

Individual was being harassed by her co-workers because she is

transgender.

b)      On or about September 25, 2015, the Area Director traveled to Hawthorne,

New York and met privately with the General Manager.

     c)     At the end of the Aggrieved Individual's shift on September 25, 2015, a few hours after the Area Director and General Manager's meeting ended, the General Manager informed the Aggrieved Individual that her employment was being terminated.

     d)     The Aggrieved Individual's discharge occurred days after the Area Director learned that the Aggrieved Individual was transgender.

     e)     The Aggrieved Individual was never issued any performance warnings during her employment with Defendant.

     f)     Approximately one week before discharging her, Defendant rated the Aggrieved Individual as meeting its performance expectations.

     g)     Defendant discharged the Aggrieved Individual because the company and/or its managers disapproved of the fact that the Aggrieved Individual is transgender.

18.     On or about September 25, 2015, Defendant engaged in unlawful employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by discharging the Aggrieved Individual in retaliation for engaging in protected activity—i.e., opposing unlawful harassment:

     a)     As set forth above, the Aggrieved Individual experienced ongoing harassment while working at Defendant's Hawthorne restaurant and objected to this harassment to Defendant's General Manager on at least three separate occasions.

     b)     Additionally, on September 21, 2015, a concerned co-worker of the Aggrieved Individual informed the Area Director that the Aggrieved

Individual was being harassed by her co-workers.

c)    The Aggrieved Individual made her last complaint of harassment to the General Manager on or about September 22, 2015.

d)    On September 25, 2015, the Area Director traveled to Hawthorne, New York and met privately with the General Manager.

e)    On September 25, 2015, shortly after the Area Director and General Manager's meeting ended, Defendant terminated the Aggrieved Individual.

f)    The Aggrieved Individual's termination occurred just days after she made complaints of harassment to the General Manager.

g)    The Aggrieved Individual was never issued any performance warnings during her employment with Defendant.

h)    Approximately one week before discharging her, Defendant rated the Aggrieved Individual as meeting its performance expectations.

i)    Defendant discharged the Aggrieved Individual in retaliation for engaging in protected activity, namely opposing sex harassment prohibited by Title VII.

19.    The effect of the practices complained of in paragraphs 16, 17, and 18 has been to deprive the Aggrieved Individual of equal employment opportunities and otherwise adversely affect her status as an employee because of sex and/or because of her opposition to unlawful sex discrimination.

20.    The unlawful employment practices complained of in paragraphs 16, 17, and 18 were intentional.

8

21.     The unlawful employment practices complained of in paragraphs 16, 17, and 18 were done with malice or with reckless indifference to the Aggrieved Individual's federally protected rights.

## **PRAYER FOR RELIEF**

WHEREFORE, the EEOC respectfully requests that this Court:

A.  Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with Defendant, from engaging in any employment practices which discriminate on the basis of sex, including transgender status;

B.  Order Defendant to institute and carry out policies, practices and programs which provide and ensure equal employment opportunities for its employees regardless of sex and which eradicate the effects of its past and present unlawful practices;

C.  Order Defendant to make the Aggrieved Individual whole by providing appropriate back pay with prejudgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including rightful-place reinstatement;

D.  Order Defendant to make the Aggrieved Individual whole by providing compensation for past pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

E.  Order Defendant to make the Aggrieved Individual whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to, emotional pain, humiliation, and inconvenience, in amounts to be determined at trial;

F.   Order Defendant to pay punitive damages for its malicious and reckless conduct described above, in an amount to be determined at trial;

G.   Grant such further relief as the Court deems necessary and proper in the public interest; and

H.   Award the EEOC its costs in this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its Complaint.


Date: June 8, 2017
New York, New York

Respectfully Submitted,

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M. Street, N.E.
Washington, D.C. 20507

JEFFREY BURSTEIN
Regional Attorney

 s/ Justin Mulaire
JUSTIN MULAIRE
Supervisory Trial Attorney

KIRSTEN PETERS
Trial Attorney

A. CHINYERE EZIE
Trial Attorney

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, Fl. 5
New York, NY 10004
(212) 336-3744
justin.mulaire@eeoc.gov
kirsten.peters@eeoc.gov
andrea.ezie@eeoc.gov